the bankrupts as security for advances to a party who claimed the goods; and that the matter required him to make a difficult and laborious investigation of the facts, adjustment of complicated accounts, attendances on the taking of testimony, and consultations with attorneys and other persons, covering a period of about 7 months, including the 150 days above named and excluding the 25 days above named. He considers his services in this matter worth $250. The above general statement does not show a special case requiring great care and exertion. It does not state facts on which the district judge can arrive at the judicial conclusion that this was a special case and required great care and exertion, nor facts from which the judge can see what amount of labor was required or what were the special circumstances of the case. It does not amount to more than the conclusions and opinions of the assignee.

The same remarks apply to the next charge. The assignee states that he attended to the matter of contesting invalid claims against the estate, which resulted in expunging proofs to the amount of $20,000; that he investigated facts and adjusted accounts, and had consultations and interviews, and examined memoranda, and attended on the taking of testimony, such services covering 260 days, including the 7 months above named, during which time he was occupied in the matter a portion of each day, and on many occasions the whole of each day, to the exclusion of all other business. For these services he asks $250.

The total sum he claims is $1250. One of the bankrupts testifies that the assignee ought to have that amount, and the assignee's partner in business, as a professional accountant and collection agent, testifies to the same effect. This is all the testimony.

So far as the deposition of the assignee in this case discloses facts to make out a special case requiring great care and exertion on his part, it is difficult to see why any case involving trouble could not be represented by an ill paid assignee in very much the same terms employed by the assignee in his deposition in this case. If the present case, as disclosed in that deposition, is not only a special case requiring great care and exertion, but one of a class spoken of, in the amendment, as "certain special cases requiring great care and exertion on the part of assignees in bankruptcy," almost all cases in which anything is done by an assignee will become such special cases. The purpose of the amendment was not to reform the rate of compensation to assignees in all cases nor in any large proportion of cases. Undoubtedly, the compensation of assignees may often be properly called insufficient, but the supreme court did not, by the amendment, intend to alter it. It intended only to provide for a small class of cases, where a special inadequacy of compensation appears, and great care and exertion are shown. In the present state of the

papers in this case I cannot adjudge that a case is made out falling within the amendment.

---

## Case No. 9,054.

### In re MANY et al.

[17 N. B. R. 514.] [1]

District Court, S. D. New York. March 29, 1877.

BANKRUPTCY—BUSINESS PAPER — ACCOMMODATION PAPER — USURY — REPRESENTATION OF CHARACTER OF PAPER TO PURCHASER — ADVANCES BY FACTORS.

1. Where an assignee in bankruptcy moves to expunge a claim on the ground of usury, alleging that a promissory note on which the claim is founded was made or endorsed by the bankrupt for the accommodation of another person and took its inception in the hands of the present holder, who obtained the same at a discount of more than the lawful rate of interest, held, that the assignee must show clearly that the note was accommodation paper.

2. Where it appeared that the bankrupts were factors for a corporation, and received goods on consignment for sale on commission, and were in the habit of giving their notes to the order of the corporation by way of advances on consignments; and it appeared that some of the notes on which this claim was founded were of that description, and were purchased by the present holder from one of the bankrupts, who was also treasurer of the corporation, at a discount of 18 per cent. per annum; but it did not appear whether these particular notes, or any of them, were given for an excess over the value of goods consigned, held, that the assignee had not shown these notes to be accommodation paper.

3. It seems that notes given by factors, by way of advances to their principals, on the credit of goods consigned, are business paper and not accommodation paper.

4. Where one member of a firm makes representations to the purchaser of commercial paper bearing the firm name, to the effect that it is business paper, the firm or their assignee in bankruptcy is estopped from setting up that it is accommodation paper and void for usury.

5. An endorser of a note is in any event liable to his endorsee only for the amount actually paid by the endorsee, with lawful interest thereon, and not for the face value of the note.

Motion by the assignee in bankruptcy of the firm of Many & Marshall, to expunge or reduce a proof of debt by one Joshua A. Clark upon certain notes. The bankrupts [Francis Many and James Marshall], composing the firm of Many & Marshall, prior to their failure, had been hardware dealers in New York. The notes in question had all been either made or endorsed in the firm name, by Francis Many, one of the bankrupts. The assignee claimed that the notes in question were made or endorsed by Many for accommodation of the other parties to the paper; that they had taken their inception in the hands of Clark (the claimant), and as he had purchased them at a greater rate of discount than 7 per cent. per annum, they were void for usury. The assignee also claimed that, on such notes as Many & Marshall were liable upon as endorsers, the claimant could

---

1 [Reprinted by permission.]

in no event prove for more than he had actually paid for the notes. Part of the notes were drawn by Francis Many, one of the bankrupts, in the name of Many & Marshall as makers, payable to the order of the Trenton Lock Company. The Trenton Lock Company was a New Jersey corporation, doing business as manufacturers of locks at Trenton. Francis Many was treasurer of this corporation. He endorsed these notes in the corporate name, and transferred them to Clark at a discount of 18 per cent. per annum. There was evidence to the effect that Many had represented to Clark, at the time of the transfer of the notes, that they were business paper. It appeared that Many & Marshall had acted for some time as factors for the Trenton Lock Company, receiving goods from the company for sale on commission. The firm had been in the habit of advancing money to the company from time to time, by notes similar to those in suit. There was evidence going to show that at the time the notes were given the firm had already issued notes to the order of the Trenton Lock Company, to an amount greatly in excess of the value of the goods held by the firm under consignment from the Trenton Lock Company.

William B. Hornblower, for assignee.
William G. Choate, for claimant.

BLATCHFORD, District Judge. I am of opinion, on the evidence, that the five notes made to the order of the Trenton Lock Company were business paper in the hands of the payees, and not accommodation paper. If they or any of them were given for an excess over the value of goods consigned, it is for the assignee in bankruptcy to show that clearly, and this is not done.

In addition, as to those five notes, I think the evidence shows that Mr. Clark purchased them on the representation by Many that they were business paper, and not accommodation paper.

In so representing, Many must be held to have acted for his firm. If his representation was untrue, he was committing a fraud on Mr. Clark.

His representation bound his firm. Story, Partn. § 108, and cases cited in note 2; Griswold v. Haven, 25 N. Y. 595.

It having been represented by the firm that the five notes were business paper, and not accommodation paper, and Mr. Clark having parted with his money on the faith of such representation, the assignee in bankruptcy of the firm cannot now deny the truth of such representation, so as to work an injury to Mr. Clark.

I therefore decide that Mr. Clark is entitled to prove on the notes A, D, M, N, and P. As to notes C and F, it is for the assignee to show that they were accommodation notes in the hands of Many & Marshall. This has not been done. Mr. Clark is therefore entitled to prove on those notes. As to note E, I think the evidence shows that it was purchased by Mr. Clark on the representation by Mr. Many that it was business paper, and that Mr. Clark is entitled to prove on it. It is contended that Mr. Clark cannot prove upon notes C, E, and F, above mentioned, or upon notes B, G, H, I, J, K, L, and O, all being notes on which Many & Marshall as a firm, if liable, are liable only as endorsers, for more than the amount he actually paid for the notes respectively, he having taken more than lawful interest in each instance. I think that is the law. Cram v. Hendricks, 7 Wend. 569; Judd v. Seaver, 8 Paige, 548.

[For subsequent proceedings in this litigation in reference to allowance to assignee, see Case No. 9,053.]

## Case No. 9,055.

### MANY v. JAGGER et al.

[1 Blatchf. 372;[1] Merw. Pat. Inv. 650; 1 Fish. Pat. Rep. 222.]

Circuit Court, N. D. New York. Oct., 1848.

PATENTS—ASSIGNMENT — DECLARATIONS AND ADMISSIONS OF ASSIGNOR—INFRINGEMENT — PRIOR KNOWLEDGE — CLAIM FOR ENTIRETY — CAR WHEELS—ABORTIVE EXPERIMENT.

1. The declarations and admissions of an assignor of personal property, made after he has parted with his interest in it, are inadmissible either to show a want of title in him, or to affect the quality of the article, or to impair the right of the purchaser in any respect.

2. In an action for the infringement of a patent, the defendant offered to show that the patentee, after he had assigned all his interest in the patent, had declared that the patented article had been abandoned and had failed and was worthless: Held, that the evidence was inadmissible.

[Cited in Woodward v. Boston Lasting Mach. Co., 8 C. C. A. 622, 60 Fed. 284.]

3. The patentee having been previously examined as a witness for the plaintiff, and not having been interrogated as to any such declaration, the evidence offered was not admissible by way of contradicting him.

4. Under section 15 of the patent act of July 4, 1836 (5 Stat. 123), a notice of defence gave the name of B. as having had prior knowledge of the invention. On the trial, F. was called as a witness to prove the prior knowledge by B., the notice, however, not making any mention of F.: Held, that the evidence was admissible.

[Cited in Woodbury Pat. Planing-Mach. Co. v. Keith, 101 U. S. 493.]

5. Where the claim of a patent was "the manner of constructing wheels for rail-road cars, with double convex plates, one convex outwards and the other inwards, and an undivided hub, the whole cast in one piece, as herein fully set forth," held, that the claim was not for the mode of constructing the wheel, as distinct from the wheel itself, but was for the car wheel after it was constructed.

6. The claim was not for any part of the wheel taken separately, as the plates or the hub, but for the entire wheel as constructed.

[Applied in Andrews v. Carmen. Case No. 371.]

[1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]